# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2473-22

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

L.M.J.,

     Defendant-Appellant.

_____

IN THE MATTER OF
THE GUARDIANSHIP
OF J.E.J., III, a minor.

_____

Submitted April 9, 2024 – Decided May 10, 2024

Before Judges Mayer and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0213-21.

Jennifer Nicole Selliti, Public Defender, attorney for appellant (Catherine Wilkes, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Lisa J. Rusciano, Deputy Attorney General, on the brief).

Jennifer Nicole Sellitti, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Randi Mandelbaum, Designated Counsel, on the brief).

PER CURIAM

L.M.J. (Lucy)[1] appeals from a March 31, 2023 order terminating her parental rights to her child, J.E.J. (John). John's father, T.F. (Tony), surrendered his parental rights to John's resource parent, M.R., (Maria), and is not a party to this appeal. After a four-day trial, Judge Thomas J. Walls, Jr. issued an eighty-three-page written opinion setting forth extensive findings of fact and conclusions of law in support of termination of Lucy's parental rights to John. We affirm essentially for the reasons set forth in Judge Walls' comprehensive decision. We briefly summarize the evidence presented at trial.

## I.

The Division of Child Protection and Permanency (Division) initially became involved with Lucy in April 2017 when she gave birth to her first child,

---

[1] We use initials and pseudonyms to protect the family's privacy pursuant to Rule 1:38-3(d)(12).

I.J. (Isla). The Division worked with Lucy and her parents, D.J., (Doris) and J.J., (Jimmy) to address concerns regarding Lucy's ability to adequately care for Isla and safety concerns in the family's home. After engaging in several months of services provided to Lucy by the Division, Isla was removed and placed with a resource family. Despite the intensity of services provided, Lucy was unable to safely parent Isla and reunification could not be effectuated. On June 28, 2019, the court terminated Lucy's parental rights to Isla. The trial court's decision was affirmed on appeal,[2] and Isla was adopted by her resource caregiver, Maria.

Shortly after Lucy's parental rights to Isla were terminated, the Division received a referral that Lucy had given birth to a second child, John, who is the subject of this appeal. Based upon Lucy's history with Isla, the Division had concerns regarding Lucy's ability to care safely for John. The Division removed John from Lucy's custody following his birth and a short hospital stay. Five months later, John was placed with his biological sister, Isla, in the resource home with Maria, where he continues to live. Maria expressed a willingness to adopt John.

---

[2] N.J. Div. of Child Prot. & Permanency v. L.M.J., No. A-5026-18 (App. Div. Apr. 27, 2020) (slip op. at 1).

The Division immediately provided services to Lucy aimed at reunifying her with John.[3] The Division provided weekly supervised visitation between Lucy and John, parenting classes for Lucy, and individual therapy for Lucy with Legacy Treatment Services (Legacy). During these supervised visits, Lucy had difficultly parenting John. Lucy's visits were transferred to Legacy to provide more intensive instruction regarding parenting of her son. The Division also arranged for Lucy to undergo a neuropsychological evaluation. The evaluator diagnosed Lucy with borderline intellectual functioning and assessed her adaptive functioning below average and basic academic skills at the elementary to middle school level. The evaluator recommended more hands-on parenting training designed to meet Lucy's intellectual needs. The evaluator's recommendations were shared with Legacy; yet, despite the more intensive parenting training provided by Legacy, Lucy was not able to apply the techniques to be able to parent John. Legacy ultimately discharged Lucy in late 2020. At that time, the Division's goal changed from reunification to adoption by the resource parent, largely due to Lucy's lack of progress.

---

[3] While N.J.S.A. 30:4C-11.3 exempts the Division from providing reasonable efforts in the event a parent's rights to another child were involuntarily terminated, no such application was made in this case. See N.J. Div. of Youth & Fam. Servs. v. S.A., 382 N.J. Super. 525, 536 (App. Div. 2006).

A-2473-22

Lucy has always lived with her parents, Doris and Jimmy, and relied upon them for support. The uncontroverted testimony from the Division's experts in this case demonstrated Lucy's intellectual difficulties prevented her from independently caring for herself much less a child. Lucy's parents, who had multiple medical challenges, were psychologically evaluated and considered as potential caretakers for Isla but were ruled out.

After the Division removed John, it again considered allowing Doris and Jimmy to serve as John's caregivers or co-parenting caregivers with Lucy. However, Doris and Jimmy refused to undergo an updated evaluation, and resisted allowing the Division access to their residence to conduct a home assessment despite a court order. As a result, the Division was not able to determine whether its concerns regarding the suitability of Doris and Jimmy's home had been abated. Thus, the maternal grandparents were again "deemed inappropriate" as potential caregivers. The Division explored several other relatives to serve as John's possible caregivers but those individuals either declined or were ruled out by the Division.

The Division filed a guardianship complaint on December 18, 2020. Although the Division's goal changed from reunification to adoption, the Division continued to provide services to Lucy aimed at the concurrent plan of

reunification. Lucy was referred to Children's Home Society's (CHS) Intensive Services Program (ISP) for further supervised visitation and evaluation. After a year of attending this program, which included a parenting skills course, individual counseling, and therapeutic visitation, Lucy was discharged in late 2021. Despite her consistent attendance, Lucy was unable to retain the skills taught in the program and demonstrate any long-term and sustained behavioral change to be able to parent John. Neither the Legacy reunification program nor the CHS's ISP recommended Lucy have unsupervised parenting time with John or there be reunification of mother and son.

In March 2022, the Division again referred Lucy to CHS. The program declined to work with Lucy unless the family agreed to periodic home assessments. The Division then referred her to the Catholic Charities Family Growth, Children and Families Program (CFS) where Lucy again received counseling and parenting services. Sadly, Lucy was unable to meet the program goals and thus, CFS did not recommend unsupervised parenting time or reunification.

During this time, John remained with his sister, Isla, in Maria's care. The trial judge carefully considered the "turbulent history" of the resource home, which included allegations of the resource parent's lack of fitness to parent John,

6

mental health issues pertaining to Maria's romantic partner, O.V.G. (Oscar), and an incident of domestic violence resulting in the issuance of a temporary restraining order against Oscar. At no time did the Division remove either Isla or John from Maria's care. After giving due consideration to these issues, and without minimizing these concerns, the judge firmly concluded that John's best interests would be "most appropriately served by remaining with the only placement he has ever known," which afforded him the opportunity to live with his biological sister, Isla.

Based upon his evaluation of the trial evidence, including the credibility of the witnesses, the court found that John's best interest would be served by terminating Lucy's parental rights, thereby freeing John to be adopted by his resource parent, Maria.

## II.

On appeal, Lucy argues Judge Walls erred in determining the Division met its burden of proof under prongs one, two and three of the best interests test under N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence.

Our review of Judge Walls' decision is limited and deferential. N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007) (citing In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). A reviewing court will

uphold a trial court's factual findings if they are "supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014) (citing N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). "We accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). But we review a trial court's legal conclusions de novo. N.J. Div. of Youth & Fam. Servs. v. I.S., 202 N.J. 145, 183 (2010).

Parents have a constitutionally protected right to raise their children. N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 599 (1986). But that right is not absolute. R.G., 217 N.J. at 553 (citing In re Guardianship of K.H.O., 161 N.J. 337, 347 (1999)). Parental rights are "tempered by the State's parens patriae responsibility to protect the welfare of children," K.H.O., 161 N.J. at 347 (citation omitted), when the child's "physical or mental health is jeopardized," A.W., 103 N.J. at 599 (quoting Parham v. J.R., 442 U.S. 584, 603 (1979)).

Under N.J.S.A. 30:4C-15.1(a), the Division must satisfy the following prongs before a parent's rights can be terminated:

(1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;[4]

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

"The Division must prove by clear and convincing evidence that all four statutory criteria are satisfied." R.G., 217 N.J. at 554. The four prongs are not "discrete and separate" but "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348.

We reject Lucy's argument regarding the judge's findings pertaining to prong three, alternatives to termination, under N.J.S.A. 30:4C-15.1(a)(3).

---

[4] On July 2, 2021, the Legislature enacted L. 2021, c. 154, deleting the last sentence of N.J.S.A. 30:4C-15.1(a)(2), which read, "[s]uch harm may include evidence that separating the child from [the child's] resource family parents would cause serious and enduring emotional or psychological harm to the child."

Lucy contends the judge did not adequately consider the possibility of her co-parenting John with her parents as an alternative to termination of her parental rights. The evidence clearly supports the judge's finding that Lucy was unable to independently parent John and that her son's safety, health, or development would continue to be endangered by the parental relationship despite Lucy's efforts to engage in various services offered by the Division over the years. The Division considered and rejected the possibility of Lucy's parents remediating this risk due to their refusal to allow the Division to assess the safety and appropriateness of their home, which also precluded the Division's ability to provide in-home services to support this reunification plan. Lucy's mother, Doris, testified at trial. The judge found Doris failed to provide any information to support a reunification plan, nor did she provide a reasonable explanation for precluding the Division's assessment of its environmental concerns in the home. Thus, the judge accorded little weight to Doris' testimony.

Notably, Lucy does not challenge the judge's legal conclusion as to prong four, whether termination of parental rights will not do more harm than good, N.J.S.A. 30:4C-15.1(a)(4). Nonetheless, Lucy argues the Division ignored John's best interests in favor of the resource family. The judge carefully examined the concerns related to the resource family and the Division's efforts

10

to investigate and address those concerns. Moreover, those concerns were thoroughly explored during defense counsel's cross-examination of the Division's caseworker. The judge weighed those concerns in light of the competent, credible evidence in the record, and properly concluded John's best interests required termination of Lucy's parental rights.

Because the record contains substantial credible evidence to support Judge Walls' decision, there is no basis for us to disturb his well-reasoned decision. While we do not doubt that Lucy loves John, she, through no fault of her own, is not capable of caring for him.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION